IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Robert E. Blackburn**

Civil Case No. 09-cv-02746-REB-KLM

LAURA SNIDER,

      Plaintiff,

v.

UNITED AIR LINES,

      Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Blackburn, J.**

This matter before me is **Defendant's Motion for Summary Judgment** [#27][1],

filed October 5, 2010.  The plaintiff filed a response [#30], and the defendant filed a

reply [#38].  I grant the motion.[2]

### I.  JURISDICTION

I have jurisdiction over this matter under 28 U.S.C. § 1331 (federal question).

### II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material

fact and the movant is entitled to judgment as a matter of law.  **FED.R.CIV.P.** 56(c);

***Celotex Corp. v. Catrett***, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265

---

[1]  "[#27]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[2] The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the papers. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. ***Geear v. Boulder Cmty. Hosp.***, 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

(1986).  A dispute is "genuine" if the issue could be resolved in favor of either party.

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586,

106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Farthing v. City of Shawnee*, 39 F.3d

1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome

of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505,

2510, 91 L.Ed.2d 202 (1986); *Farthing*, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of

a genuine fact issue.  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d

1513, 1517 (10th Cir. 1994), *cert. denied*, 115 S.Ct. 1315 (1995).  Once the motion has

been properly supported, the burden shifts to the nonmovant to show, by tendering

depositions, affidavits, and other competent evidence, that summary judgment is not

proper.  *Concrete Works*, 36 F.3d at 1518.  All the evidence must be viewed in the light

most favorable to the party opposing the motion.  *Simms v. Oklahoma ex rel*

*Department of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326

(10th Cir.), *cert. denied*, 120 S.Ct. 53 (1999).  However, conclusory statements and

testimony based merely on conjecture or subjective belief are not competent summary

judgment evidence.  *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir.), *cert.*

*denied*, 120 S.Ct. 334 (1999).

### III.  FACTS

The plaintiff, Laura Snider, was employed by the defendant, United Air Lines, for

many years.  She began her employment with United working as a ramp service

person.  Snider suffered a back injury in September, 1998, and was on worker's

compensation leave until March, 2002.  When Snider returned to work, her physical

restrictions were lifting, carrying, pushing, and pulling up to 30 pounds occasionally, 20

pounds frequently, and 10 pounds constantly; alternating sitting, standing, and walking; occasionally bending at the waist, twisting, turning, squatting, and climbing heights; and restricting kneeling activities. *Motion for Summary Judgment*, Exhibit A-4. Snider continues to be subject to those restrictions. *Id.*, Exhibit A-1 (Snider Deposition), 50:11 - 51:4.

When she returned to work in 2002, Snider was assigned a position as a baggage auditor. At the time, the position involved auditing inbound flights to ensure that connecting bags were segregated properly. In April, 2006, United re-evaluated the baggage auditor position and removed everyone in that position from the position, pending the re-evaluation. Snider was placed on injured leave and was told that the evaluation of the position would take 45 days. *Response* [#30], Exhibit 2 (Snider Affidavit), ¶¶ 2 - 3. Snider says one of her fellow baggage auditors, John Buhrman, was returned to the position after the 45 day study of the position. *Id.*, ¶ 20. Snider was told that she could not return to the position because of her lifting limitations. *Id.*, ¶ 7. According to United, the baggage auditor position then was changed to include a requirement that baggage auditors be capable of certain physical bag handling requirements. These new requirements were outside of Snider's medical restrictions. United agrees that Snider was not returned to the baggage auditor position because the bag handling requirement was contrary to Snider's lifting limitations.

Snider remained on injured leave, which is known also as "I time," until she had exhausted her sick leave. In September, 2006, after Snider had exhausted her sick leave and no longer was being paid by United, she was placed on illness leave of absence status (EIS). At this time, Snider called Pamela Brown, United's Airport Operations Supervisor. Brown suggested that Snider find another job. On September

27, 2006, United sent a letter to Snider explaining the terms of her EIS status, including a warning that "[w]hile on EIS, you **may not** accept other employment without written consent from United Airlines." *Defendant's Motion for Summary Judgment*, [#27], Exhibit A-8, p. 2 (emphasis in original).

In May, 2007, while still on EIS status with United, Snider began to work for ARGUS PROS Aviation.  Snider did not obtain approval from United before accepting this job.  When Brown learned that Snider had accepted a new job without United's approval, Brown conferred with her supervisor, Jeanne Nelli.  Brown then decided to terminate Snider's employment because Snider had accepted another job while on EIS status without prior approval from United. In her **Complaint** [#1], the plaintiff alleges that she was terminated from her employment with United based on her sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e - 2000e-17, and based on her alleged disability, in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12102 - 12213.  In addition, Snider asserts a claim for promissory estoppel under state law.  In her response [#30] to the motion for summary judgment, Snider confesses the defendant's motion for summary judgment as to her claim of age discrimination under state and federal law, her claim of breach of contract, and her claim for breach of §24-34-402(5), C.R.S.  *Response* [#30], p. 1 n. 1.  Therefore, I address in this order only Snider's claims based on Title VII, ADA, and promissory estoppel.

## IV.  ANALYSIS

### A.  Discrimination Claims

Snider has presented little, if any, direct evidence to support her Title VII sex discrimination claim.  Thus, analysis of this claim is governed by the familiar burden-

shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

Under that rubric, the plaintiff bears the burden to first establish a *prima facie* case of

sex discrimination by showing: (1) that she is a member of a protected class; (2) that

she suffered an adverse employment action; (3) that she was qualified for the position

at issue; and (4) that she was treated less favorably than others not in the protected

class. *See, e.g., Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 531 (10th Cir.1998).  If a

plaintiff establishes a *prima facie* case of discrimination, then the burden shifts to the

defendant to articulate a legitimate, non-discriminatory reason for its employment

decision.  *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254

(1981); *Jaramillo v. Colorado Judicial Department*, 427 F.3d 1303, 1307 (10th Cir.

2005).  This is a burden of production, not of persuasion.  *Burdine*, 450 U.S. at 254 -

255.  If the defendant produces admissible evidence of a legitimate, non-discriminatory

reason for its employment decision, then the burden shifts back to plaintiff to prove the

ultimate fact of discrimination by showing that defendant's proffered reason is a pretext

for unlawful discrimination.  *Burdine*, 450 U.S. at 255;  *MacKenzie v. City and County*

*of Denver*, 414 F.3d 1266, 1278 (10th Cir. 2005); *Garrett v. Hewlett-Packard Co.*, 305

F.3d 1210, 1216 (10th Cir. 2002).  Pretext may be inferred when there are such

"weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

employer's proffered legitimate reasons for its action [such] that a reasonable factfinder

could rationally find them unworthy of credence and hence infer that the employer did

not act for the asserted non-discriminatory reason."  *Garrett*, 305 F.3d at 1217 (citation

and internal quotation marks omitted; alteration in original).

In this case, the adverse employment action in question is Brown's termination of

Snider's employment in May 2007.  There is some dispute in the record about whether

or not Snider was qualified for the baggage auditor position after the re-evaluation of

that position which began in April 2006.  Rather than address this dispute, I assume,

without deciding, that Snider has established a *prima facie* case of sex discrimination.

United says it terminated Snider's employment because Snider violated United's

employment rules when Snider accepted other employment while on EIS status without

written consent from United.  On its face, this is a legitimate, non-discriminatory reason

for United's employment decision.  Snider argues that she has shown that this reason

for her termination was a pretext for sex discrimination because she has come forward

with evidence that the addition of the baggage handling requirement to the baggage

auditor position was not a legitimate change in the requirements for that position.

Rather, Snider contends that the addition of the baggage handling requirement was an

effort by those managing the baggage auditor position to exclude Snider from the

position.

In her Complaint [#1], Snider does not describe the change in the requirements

for the baggage auditor position and does not allege that she suffered an adverse

employment action when she was not returned to that position after the baggage

handling requirement was added.  There is no evidence in the record that Pamela

Brown, the person who made the decision to terminate Snider's employment in May

2007, had any input on or control over the requirements for the baggage auditor

position.  There is no evidence in the record that any of the managers who had control

over the baggage auditor position at the relevant time, including the time when the

baggage handling requirement was added to the position, had any contact with Brown

or any influence on Brown's decision to terminate Snider.  Viewing the undisputed facts

in the record in the light most favorable to the plaintiff, there is no evidence that tends to

show than any irregularities in the addition of the baggage handling requirement to the baggage auditor position played any role in Brown's decision to terminate Snider's employment.  Any such irregularities do not tend to show that the reason for Brown's decision to terminate Snider was a pretext for discrimination. Notably, Snider testified in her deposition that she does not think that Brown discriminated against her in any way because Snider is a woman.  *Snider Deposition*, 102:25 - 103:3.

The **McDonnell Douglas** burden shifting analysis applies also to Snider's claim of disability discrimination under the ADA.  Assuming, without deciding, that Snider has established a *prima facie* case of disability discrimination, United has come forward with a legitimate, non-discriminatory reason for Snider's termination, as detailed above. Snider has not produced any evidence that Brown's legitimate, non-discriminatory reason for terminating Snider was a pretext for disability discrimination.  As with her sex discrimination claim, Snider relies on perceived irregularities in adjusting the requirements for the baggage auditor position in an effort to show pretext.  As with Snider's sex discrimination claim, there is no evidence that tends to show than any irregularities in the addition of the baggage handling requirement to the baggage auditor position played any role in Brown's decision to terminate Snider's employment.  Any such irregularities do not tend to show that the reason for Brown's decision to terminate Snider was a pretext for discrimination. Notably, Snider testified in her deposition that she does not think that Brown discriminated against her in any way because Snider has physical limitations.  *Snider Deposition*, 103:6 - 103:9.

Viewing the undisputed facts in the record in the light most favorable to Snider, I conclude that no reasonable fact finder could conclude that United's stated reason for Snider's termination was a pretext for sex or disability discrimination.  Absent some

evidence of pretext, Snider's Title VII sex discrimination and her disability discrimination

claim both fail.  United is entitled to summary judgment on Snider's Title VII sex

discrimination claim and her ADA claim of disability discrimination.

### B.  Promissory Estoppel Claim

It is undisputed that, when Snider first was employed with United, her

employment was at-will employment.  To overcome the presumption of at-will

employment and establish her promissory estoppel claim based on United's policies or

statements, Snider must show (1) that United reasonably should have expected Snider

to consider United's policies or promises as a commitment from United; (2) that Snider

relied reasonably on those policies or promises to her detriment; and (3) that injustice

can be avoided only by enforcing the policies or promises.  ***Continental Airlines v.***

***Keenan***, 731 P.2d 708, 711 (Colo. 1987).  Any such promise or policy "must be

sufficiently specific so that the judiciary can understand the obligation assumed and

enforce the promise according to its terms."  ***Hoyt v. Target Stores***, 981 P.2d 188, 194

(Colo. App. 1998).

> Thus, in order to constitute an enforceable promise, a statement by
> the employer must meet two requirements. It must disclose a promissory
> intent or be one that the employee could reasonably conclude constituted
> a commitment by the employer. If it is merely a description of the
> employer's present policies, it is neither a promise nor a statement that
> can reasonably be relied upon. In addition, the employer's statement must
> be sufficiently definite to allow a court to understand the nature of the
> obligation undertaken.
>
> Assurances of fair treatment or "mere vague assurances" are
> unenforceable.

***Id***.

Snider relies on oral promises by United management and human resources

personnel that the company would not discriminate against employees based on sex or

disability.  *Response* [#30], p. 19.   Such oral statements are "merely a description of

the employer's present policies, (and are) neither a promise nor a statement that can

reasonably be relied upon."  *Hoyt*, 981 P.2d at 194.  Further, there is no evidence in this

case to support Snider's contention that her termination was motivated by unlawful

discrimination based on her gender or disability.

Snider relies also on a purported promise by United that Snider would remain in

the baggage auditor position as long as there is a need for a baggage auditor and that

she could remain on "I time" if she was removed from the baggage auditor position.

*Response* [#30], p. 19.  Specifically, she relies on statements made by a United official

after an accommodation hearing was held in March, 2002, concerning Snider's return to

work after her workers' compensation leave.  In a memo documenting the

accommodation hearing, a United official said "(t)his temporary assignment [as a

baggage auditor] will last as long as there is a need for a baggage auditor. [Snider]

understands that if this assignment ends, she will be put out on "I" time, unless her

restrictions change."  *Response* [#30], Exhibit 21.

Snyder claims that United breached its promise to keep her in the baggage

auditor position when United removed her from that position after the baggage handling

requirement was added to the position.  The language of the memo, quoted above,

demonstrates that Snider could not reasonably rely on these statements as enforceable

promises.  Her placement in the baggage auditor position explicitly was described as

temporary in the memo.  Given the language of the memo, it is not reasonable for

Snider to treat the memo as a promise of a permanent placement in a baggage auditor

position.  Snider claims that United breached its promise to keep her "out on 'I' time"

when Snider was switched EIS status, and her pay was terminated, after Snider used

up all of her sick leave. *Response* [#30], Exhibit 21. United's statement that if Snider's

baggage auditor assignment ends, then she "will be put out on 'I' time, unless her

restrictions change," *Response* [#30], Exhibit 21, cannot reasonably be read as a

promise that Snider had been granted unlimited "I time," or unlimited paid sick time.

Viewing the undisputed facts in the record in the light most favorable to Snider, I

conclude that no reasonable fact finder could conclude that Snider relied reasonably on

any of United's statements as enforceable promises made to Snider by United. Thus,

United is entitled to summary judgment on Snider's promissory estoppel claim.

## V.  CONCLUSION

Viewing the undisputed facts in the record in the light most favorable to Snider, I

conclude that no reasonable fact finder could find in favor of Snider on her Title VII sex

discrimination claim, her ADA disability discrimination claim, or her promissory estoppel

claim. Therefore, United is entitled to summary judgment on each of these claims.

Snider has conceded United's motion for summary judgment as to the other claims she

asserts in her **Complaint** [#1], and, thus, United is entitled to summary judgment on

those claims as well.

## VI. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That the **Defendant's Motion for Summary Judgment** [#27] filed October 5,

2010, is **GRANTED**;

2.  That the plaintiff's claim of sex discrimination under Title VII, her First Claim

for Relief; her claim of disability discrimination under the ADA, her Third Claim for

Relief; and her promissory estoppel claim, her Sixth Claim for Relief, are **DISMISSED**

with prejudice;

3.  That based on the plaintiff's concession of the defendant's motion for summary judgment as to all of her other claims, as stated in the plaintiff's response [#30] to the defendant's motion for summary judgment, the plaintiff's Second, Fourth, Fifth, and Seventh Claims for Relief are **DISMISSED** with prejudice;

4.  That judgment **SHALL ENTER** in favor of the defendant, United Air Lines, and against the plaintiff, Laura Snider, on all claims for relief and causes of action;

5.  That the Trial Preparation Conference, currently scheduled for January 7, 2011, as well as the trial, currently scheduled to commence on Monday, January 24, 2011, are **VACATED**;

6.  That the **Defendant's Motion To Strike Certain Exhibits Attached To Plaintiff's Summary Judgment Response** [#42] filed December 3, 2010, is **DENIED** as moot; and

7.  That defendant is **AWARDED** its costs, to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated December 14, 2010, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge

11